**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DANIEL ACUNA and JERRY SHAFFER, as
individuals and on behalf of others similarly
situated,

          Plaintiffs,

vs.

So. Nev. T.B.A. Supply Co., a Nevada corporation,
doing business as Ted Wiens Tire & Auto Centers,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:16-cv-00457-GWF

**ORDER**

**Re:  Motion For Preliminary Approval
of Class Action Settlement**

      This matter is before the Court on the parties' Joint Motion to Approve Settlement (ECF No. 63) and Amended Joint Motion to Approve Settlement (ECF No. 78), filed on March 9, 2018 (hereinafter *"Joint Motion"* and *"Amended Joint Motion"*).

<u>**PROCEDURAL BACKGROUND**</u>

      The parties filed their Joint Motion to Approve Settlement on March 20, 2017.  On November 29, 2017, the parties filed a Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (ECF No. 68) which was approved by the Chief District Judge on December 4, 2017.  This case has been assigned to the undersigned Magistrate Judge to conduct all proceedings and order entry of final judgment.  The Court conducted a hearing on this matter on January 11, 2018.

      Following the January 11th hearing, Plaintiffs filed a Supplemental Brief (ECF No. 74), in support of their request for an award of attorney's fees and to clarify the request for reimbursement of litigation costs.  The parties also filed a Supplement to the Joint Motion (ECF No. 75) on February 2, 2018 which included as an amendment to the settlement agreement, a revised Uniform Laundering Fee

Settlement Claim Form and a Request for Exclusion from the Rule 23 Uniform Subclass Settlement.

On February 2, 2018, the Court ordered the parties to clarify the Rule 23 subclass, the release of claims of members of the Rule 23 subclass, and the payment of awards to Rule 23 class members. *Order* (ECF No. 76).  The parties addressed these matters in the *Amended Joint Motion* (ECF No. 78).

## BACKGROUND AND DISCUSSION

Plaintiffs Daniel Acuna and Jerry Schaffer alleged in their amended complaint that Defendant So. Nev. T.B.A. Supply Co., doing business as Ted Wiens Tire & Auto Centers ("Ted Wiens"), had a company-wide policy of deducting $7.50 from employees' paychecks for cleaning their company-issued uniforms.  *Amended Complaint* (ECF No. 6).  Plaintiffs allege that this policy violates Nevada Revised Statute (NRS) § 608.165 which states:

> All uniforms or accessories distinctive as to style, color or material shall be furnished without cost, to employees by their employer.  If a uniform or accessory requires a special cleaning process, and cannot be easily laundered by an employee, such employee's employer shall clean such uniform or accessory without cost to such employee.

Defendant gave employees the option of cleaning their uniforms at their own expense or participating in the uniform rental plan pursuant to which Defendant deducted the $7.50 from their paychecks.[1]  Plaintiffs allege that employees have a private right of action against their employer for the violation of this statute.  They argue that Defendant violated this statute because their uniforms became soiled with grease and other chemicals and could not be adequately cleaned by ordinary household laundering processes.  Defendant disputes whether a violation of  NRS § 608.165 gives rise to a private right of action, or that employee uniforms required a special cleaning process.

The amended complaint identified a "Laundry Fee Class" consisting of those employees who had $7.50 deducted from their paychecks.  *Id.* at ¶17.a.  Plaintiffs alleged that as a result of the Laundry Policy some employees' pay could be reduced below the federal minimum wage required by 29 U.S.C. § 206(a)(1)(c).  *Id.* at ¶ 37.  They further alleged that the Laundry Policy had the effect of depriving quitting or discharged employees of all the wages due to them in violation of NRS §§ 608.020, 608.050

---

[1]The parties advised the Court that Defendant ceased this practice prior to the mediation conference in 2017.

and 608.110.

The amended complaint also identified a "Minimum Wage Class." *Id.* at ¶ 17.b. Plaintiffs alleged that Mr. Acuna and possibly other employees were paid an hourly wage less than Nevada's $7.25 minimum wage in violation of NRS § 608.260 vis-a-vis Nevada's Constitution, Article 15, Section 16.A. *Id.* at ¶ 42[2] Plaintiffs alleged that a class should be certified pursuant to Fed.R.Civ.P. 23(b)(3) for all employees who were not paid the correct minimum wage under Nevada law. *Id.* at ¶ 17.b. The amended complaint also identified a "Technicians Class" which consisted of technician employees who were improperly classified as "exempt" from the overtime pay requirements of the Fair Labor Standards Act ("FLSA"). *Id.* at ¶¶ 17.c., 18. Alternatively, Defendant allegedly classified the technicians as "non-exempt," but failed to pay them overtime wages required by the FLSA. *Id.* at ¶ 18. The amended complaint sought certification of an FLSA collective action class consisting of all "technicians" employed by Defendant since at least 2011.

The amended complaint alleged causes of action for (1) unpaid minimum wages and overtime pay pursuant to pursuant to 29 U.S.C. § 206(a)(1)(C) and 207; (2) monies illegally deducted from the Plaintiffs' and other employees' paychecks for uniform laundering pursuant to NRS §§ 608.165, 608.020, 608.050 and 608.110, and for unpaid minimum wages pursuant to NRS § 608.260 vis-a-vis Article 15, Section 16.A of the Nevada Constitution; (3) unjust enrichment and (4) conversion. *Id.* at ¶¶ 55-90.

Defendant filed a motion to partially dismiss the amended complaint on the grounds that (1) the claims are barred by the statute of limitations; (2) NRS §§ 608.020, 608.050 and 608.110 do not give rise to a private cause of action under Nevada law; and (3) the Laundry Policy did not violate NRS 608.165 or give rise to a claim for failure to pay minimum wages under 29 U.S.C. § 206(a)(1)(C). *Motion to Dismiss* (ECF No. 16). Plaintiffs filed a motion for class certification pursuant to Fed.R.Civ.P. 23(b)(3) and 29 U.S.C. § 216(b) in which they requested certification of (1) a "Laundry Fee Class" pursuant to Rule 23(b)(3); (2) a "Minimum Wage Class" pursuant to Rule 23(b)(3); and (3) a

---

[2] NRS § 608.260 states that an employee may bring a civil action to recover the difference between the amount paid to the employee and the amount of the minimum wage he or she was entitled to be paid. Article 15, Section 16.A. of the Nevada Constitution establishes the minimum wage in Nevada.

"Technician Class" pursuant to 29 U.S.C. § 216(b). *Motion for Class Certification* (ECF No. 23). Both parties filed motions for partial summary judgment with respect to the laundry policy.

The parties state that they exchanged written discovery requests and responses, and that Plaintiffs obtained extensive personnel records, wage records, and other pertinent documents from the Defendant. The parties thereafter participated in a mediation conference on January 25, 2017 which resulted in the proposed settlement agreement. Defendant agrees to pay a maximum of $295,000.00 in ten (10) equal monthly installments which may vary by up to 5 percent so long as the total payment does not exceed $295,000.00. The proposed settlement provides that attorney's fees, litigation costs including the amount to be paid for the services of the the Claims Administrator, and the enhancement payments to the class representatives, will be deducted from the total settlement payment, leaving an estimated $182,900.00 for payment to class members who participate in the settlement. Payments will be made on a pro rata basis. *Joint Motion*, at 3; *Amended Joint Motion*, at 18, 25, 27.

Pursuant to the "Stipulation and Agreement for Settlement and Release of Fair Labor Standards Act Collective Action and Settlement and Release of Claims in Accompanying Class Action" ("Settlement Agreement*"), Joint Motion, Exhibit 1*, and the second amended stipulation thereto, *Amended Joint Motion, Exhibit 5*, the parties request certification of two FLSA opt-in subclasses under 29 U.S.C. § 216(b) which are defined as follows:

> (1) The "Mechanics Subclass," for which Plaintiff Acuna is the Class Representative, is comprised of those present and former employees of Defendant who, during the Class Period of March 2, 2013, through January 31, 2017, performed automobile maintenance and repair; were and are paid mostly by commissions; and for whom Defendant claims the retail/service commission exemption under the FLSA and Nevada law. Settlement Agreement at ¶ 1.i.

> (2) The "Technicians Subclass," for which Jerry Shaffer is the Class Representative, consists of those present and former employees who, during the Class Period, performed either (a) commercial tire repair and servicing or (b) specific types of automobile servicing, but not the same work as Mechanics; these employees all were and are paid at hourly rates supplemented by commissions. *Id.* at ¶ 1.j.

*Amended Joint Motion*, at 9.

The parties also request the preliminary certification of a Uniform Subclass pursuant to Rule 23 of the Federal Rules of Civil Procedure which is defined as follows:

The "Uniform Subclass" is those persons employed by Defendant during the Class Period of March 2, 2013 to January 31, 2017 who paid, through payroll deductions, fees to cover the costs of laundering their uniforms. *Id.* at ¶ 1.k.

The parties have clarified in the amended joint motion that they do not seek to certify the "Mechanics Subclass" or "Technician Subclass" as Rule 23 subclasses. Members of the Mechanics Subclass and Technician Subclass who are also members of the Uniform Subclass, however, will be deemed to release their state law claims relating to the laundering of uniforms if they do not request exclusion from the Rule 23 class action settlement.

The parties have also clarified that the only claims being settled by members of the Uniform Subclass are those alleging that Defendant violated Nevada law by charging them for laundering their uniforms. Unless a Uniform Subclass member requests exclusion from the Rule 23 class action settlement, he or she will be bound by the settlement and will be eligible to receive monies from the settlement as set forth in paragraphs 1.1., 20.a.(iii) and (iv), and 20.b.(ii) of the Settlement Agreement. *Amended Joint Motion, Exhibit 5*, at ¶ 2. The parties have agreed to amend Paragraph 1.bb. of the Settlement Agreement to make clear that only claims arising under Nevada law will be released pursuant to the settlement of the Uniform Subclass claims. *Id.* at ¶ 4. The parties have also clarified that the exclusion process in Paragraph 32 of the Settlement Agreement applies only to the Rule 23 Uniform Subclass. *Id.* at ¶ 5.

Defendant reserves the right to oppose class certification in the event the action proceeds on its merits. "This would occur if the Court did not approve the Settlement, or Defendant exercises its right to rescind and void the Settlement in the event that more than ten percent (10%) of the Class members object, opt out, and do not return a valid claim form." *Settlement Agreement*, at ¶ 21. The parties state that approximately 259 present or former employees are eligible for one or more of the proposed subclasses. *Joint Motion*, at 7.

The parties propose that the maximum payment of $295,000.00 be apportioned and paid as follows: (1) $97,350.00 to Class Counsel as attorney's fees; (2) $14,600.00 to Class Counsel for costs, which includes a payment of up to $10,000 to Swarts & Swarts, CPA, as Claims Administrator; and (3) $1,000.00 each to Plaintiffs Acuna and Schaffer for their services as class representatives. *Amended*

*Joint Motion*, at 18-27.[3]  If the Court approves a lower amount for attorney's fees, costs or payments to the Plaintiffs as class representatives, then the difference shall be added to the amount available for payment to class members. *Settlement Agreement*, at ¶ 25.

The Settlement Agreement provides that payments to class members will be made from three sub-funds allocated to the Mechanics Subclass, Technicians Subclass and Uniform Subclass. *Id.* at ¶ 20.a.(ii).  The amount of payments to subclass members shall be determined by the Claims Administrator on the basis of the following procedures and formulae:

Mechanics Subclass and Technicians Subclass members who return signed, valid Claim/Consent and Release Forms will receive shares of the Mechanics or Technicians Subclass funds calculated with reference to a percentage of the portion of the Settlement Fund allocated to the Mechanics or Technicians Subclass members that corresponds to the number of full or partial calendar months each Mechanics or Technician Subclass member was employed by Defendant during the Class Period.  The following information will be obtained from Defendant's records to determine the award to each potential class member: The total number of full or partial calendar months all Mechanics or Technicians Subclass members were employed during the Class Period; and the total number of full or partial calendar months each Mechanics or Technicians Subclass member was employed.  Defendant will prepare a spreadsheet for each subclass that lists (A) the actual number of full and partial calendar months each subclass member was employed during the Class Period; and (B) the total number of full and partial calendar months all persons in the subclass were employed during the Class Period.  The Claim/Consent and Release Form for each member of the Mechanics or Technicians Subclass will inform the subclass member of the number of full or partial calendar months that the subclass member was employed and of the calculated settlement payment.  *Id.* at ¶20.a.(ii).

The payment for each eligible member of the Mechanics Subclass or Technicians Subclass will be based on the following formula:  (A) the number of full or partial calendar months each subclass member was employed during the Class Period, (B) divided by the total number of full work weeks all

---

[3]Although the parties state that $182,900.00 will remain for payment of subclass member claims if the foregoing payments are approved, the Court's arithmetic results in a remaining balance of $181,050.00.

6

members of the subclass were employed during the Class Period, to (C) obtain the percentage of full or partial calendar months for each member of the subclass. That percentage will then be applied to the monies allocated to each subclass to determine the amount of the subclass member's payment. *Id.* at ¶ 20.a.(iv).

The Uniform Subclass members will receive a percentage of the monies allocated to the Uniform Subclass calculated with reference to the number of full or partial calender months the specific Uniform Subclass member was employed and had deductions from his or her paychecks for uniform laundering during the Class Period. The following information will be obtained from Defendant's records to determine the payment to each potential Uniform Subclass member: The total number of full or partial calendar months of employment for each person from whose paychecks Defendant deducted money for uniform laundering during the Class Period; and the number of full or partial calendar months of all Uniform Subclass members' employment in which Defendant deducted from paychecks for uniform laundering during the Class Period. *Id.* at ¶ 20.a.(iii).

The following formula will be used to calculate the payment for each eligible member of the Uniform Subclass: (A) the number of full or partial calendar months each subclass member was employed during the Class Period and had deductions from his or her paycheck for uniform laundering, (B) divided by the total number of full work weeks all subclass members who were employed during the Class Period and had deductions from their paychecks for uniform laundering, to (C) obtain the percentage of full or partial calendar months applicable to each Uniform Subclass member's share of the total number of full or partial months for which there were paycheck deductions for uniform laundering during the Class Period. That percentage will then be applied to the monies allocated to the Uniform Subclass to determine the amount of the subclass member's payment. *Id.* at ¶ 20.a.(i)-(iv).

The Settlement Agreement, as amended, and the proposed Notice of Settlement, *Amended Joint Motion, Exhibit 6,* provide that the claims of putative members of the Mechanics or Technicians Subclasses who do not return a completed Claim/Consent Form and Release will not be released. *Settlement Agreement*, ¶¶ 1.aa., 37. As stated above, the only claims of the Rule 23 Uniform Subclass members that will be released pursuant to the settlement are Uniform Subclass members' state law claims relating to paycheck deductions for uniform cleaning. Uniform Subclass members who timely

request exclusion from the settlement may pursue their state law claims on an individual basis and will be subject to any defenses available to the Defendant.

The revised version of the Notice of Settlement, *Amended Joint Motion, Exhibit 6*, still contains incorrect or misleading information about the scope of claims that will be released. First, paragraph 17, at page 4, states: "If you are a member of one or more Subclasses, you will be bound by the proposed settlement if it is approved, unless in some cases you make a written Request for Exclusion in the manner described below." This paragraph is vague and could cause confusion for members of the Mechanics and Technicians Subclasses whose state and federal claims are not released unless they consent to be members of the subclasses and participate in the settlement. Paragraph 17 should therefore be revised.

Second, the last phrase in paragraph 27.a. states: "provided that, only those Members of the Mechanics and Technicians Subclasses who timely submit valid Claim/Consent Forms will be deemed to have waived and released claims under the FLSA." This phrase should be revised to state: "provided that, only those Members of the Mechanics and Technicians Subclasses who timely submit valid Claim/Consent Forms will be deemed to have waived and released *the above described claims*."

Third, the reference in paragraph 27.b. to the release of claims "under federal or state law" should be revised to state "*under state law*."

The settlement agreement and the proposed Notice of Settlement also describe the process by which members of the three subclasses may object to the settlement agreement and participate in the final fairness hearing. *Settlement Agreement*, ¶¶ 34-36; *Amended Joint Motion*, *Exhibit 6*, at 9-10.

The parties have prepared a proposed "Claim/Consent Form and Release" to be mailed to potential members of the FLSA Mechanics or Technicians Subclasses, and a separate "Claim Form" to be mailed to members of the Rule 23 Uniform Class. *Settlement Agreement*, Exhibits D, A-1 and A-2.

The proposed Claim/Consent Form and Release advises members of the Mechanics or Technicians Subclasses to:

COMPLETE AND SIGN THIS FORM, SPECIFICALLY THE SECOND PAGE, IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT OF CLAIMS FOR UNPAID WAGES AND RECEIVE YOUR SHARE OF THE SETTLEMENT FUND.

8

The Claim/Consent Form and Release will state the amounts that the class member will receive for wages, liquidated damages and interest as calculated by the Claims Administrator. If the class member disagrees with the calculation, he must provide written evidence of the amount he claims he is entitled to receive to the Claims Administrator within 60 days of the mailing of Notice of Claim and Claim/Consent Form and Release form. The Claims Administrator "retains the sole discretion to adjust your claim depending on the evidence you submit." Exhibit A-1.

The Claim/Consent Form and Release further states:

> CONSENT TO JOIN: My signature on this Claim/Consent Form constitutes my consent, for the purposes of participating in the settlement, to join the legal action under the FLSA, *Daniel Acuna, et al. v. Southern Nevada t.b.a. Co.,* Case No. 2:16-cv-00457-GMN-GWF, against Ted Wiens Tire & Auto Centers.

> RELEASE: My signature on this Claim/Consent Form constitutes my release of all claims and causes of action [relating to any claim under the FLSA or Nevada law for failure to pay regular wages or overtime wages, failure to keep records regarding time worked, failure to pay liquidated damages, and any other damages or equitable recovery].

The proposed Claim Form for the Rule 23 Uniform Class states:

> COMPLETE AND SIGN THIS FORM IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT OF CLAIMS OF UNLAWFUL DEDUCTIONS OF FEES TO LAUNDER UNIFORMS AND RECEIVE YOUR SHARE OF THE SETTLEMENT FUNDS.

The Claim Form also sets forth the settlement amount that the class member will receive if he or she returns the executed claim form, and notifies the class member of the opportunity to submit evidence if he or she disagrees with the calculation of the settlement award. Exhibit A-2. Pursuant to the parties' amendment to the settlement agreement, members of the Uniform Subclass who are current employees of Defendant will not be required to submit claim forms to participate in the settlement, unless they dispute the amount of the payment to be made to them. Former employees must submit claim forms to participate. Members of the Rule 23 Uniform Subclass will also be sent a form to request exclusion from Uniform Subclass Settlement if they do not want to participate in the class action settlement. *See Supplement to Joint Motion* (ECF No. 75), Exhibit F.

## DISCUSSION

The parties seek preliminary certification and approval of the proposed FLSA collective action

settlement under 29 U.S.C. § 216(b) and the proposed class action settlement under Rule 23(e) of the Federal Rules of Civil Procedure. Although "hybrid actions" involving Rule 23 and FLSA classes are not prohibited, such combined actions may cause confusion to potential class members. As stated in *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 528 (9th Cir. 2013), "[u]nder the FLSA, a potential plaintiff does not benefit from (and is not bound by) a judgment unless he or she affirmatively 'opts-in' to the lawsuit. . . . This rule is in contrast to the typical Rule 23 class action, where a potential plaintiff must opt out to be excluded from the class. *See* Fed.R.Civ.P. 23(c)(2)(B)(v)." The notice of settlement, and the documents to be completed by the class members to "opt-in" or "opt-out" of the settlement, and to submit claims must adequately inform the class members of their respective rights under the FLSA and Fed.R.Civ.P. 23. *Id.* at 529-30.

Rule 23(e) establishes the following procedures for approving a class action settlement: (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal; (2) if the proposal would bind class members, the court must approve it only after a hearing and on finding that it is fair, reasonable and adequate; (3) the parties seeking approval must file a statement identifying any agreement made in connection with the proposal; (4) if the class action was previously certified under Rule 23(b)(3), the court may refuse to approve the settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so; and (5) any class member may object to the proposal if it requires court approval.

The approval of a class action settlement pursuant to Rule 23 takes places in two stages. First, the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class and authorizes notice to the class. *Chavez v. Lumber Liquidators Inc.*, 2015 WL 174168, at *3 (N.D.Cal. May 8, 2015). "At this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D.Cal. 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n. 3 (7th Cir. 1982)). "The court is really only concerned with 'whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys . . . .'"

*Id.* (citing *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *11 (E.D.Cal. June 13, 2006)). Once the court is satisfied as to the certifiability of the class and the results of the initial inquiry into fairness, reasonableness and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members. At the final fairness hearing, the court entertains class members' objections to (1) the treatment of the action as a class action and/or (2) the terms of the settlement. The court then makes a final determination whether the parties should be allowed to settle the case pursuant to the terms of the proposed settlement. *Id.* (citing *Manual for Complex Litigation*, Fourth, § 21.633 (2004); *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 525 (C.D.Cal. 2004)).

Before approving the settlement of an FLSA collective action, the court must undertake an inquiry similar to that required for Rule 23 class action settlements. The requirements for approval of a FLSA collection action settlement are less stringent, however, because persons who do not opt-in as parties to the FLSA collective action are not bound by the settlement. *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 607 (E.D.Cal. 2015). Most district courts in the Ninth Circuit evaluate a proposed FLSA settlement under the standard established in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires that the settlement constitute a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Gonzalez-Rodriguez v. Mariana's Enterprises*, 2016 WL 3869870, at *3 n. 1 (D.Nev. July 14, 2016) (citing district court decisions from the Southern and Northern Districts of California and the District of Arizona). Some courts adopt the factors for approving a Rule 23 class action settlement even though some factors will not apply due to differences between FLSA actions and Rule 23 class actions. *Khanna v. Intercon Security Systems, Inc.*, 2014 WL 1379861, at *6 (E.D.Cal. April 8, 2014).

## I.     Preliminary Certification of the Rule 23 Uniform Subclass.

Before evaluating a proposed settlement under Rule 23(e), the court must determine whether the settlement class meets the requirements of Rule 23(a) applicable to all class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Hanlon v. Chrysler Corporation*, 150 F.3d 1011, 1019 (9th Cir. 1998). "A class may only be certified if the court is 'satisfied after rigorous analysis that the prerequisites of Rule 23(a) have been satisfied.'" *Millan*, 310 F.R.D. at 603. Once subsection (a) is satisfied, the putative class must then fulfill the requirements of Rule 23(b)(3)— that

11

the questions of law or fact common to the class members predominate over any questions affecting

individual members, and that a class action is superior. *Id.*

      **(a) <u>Numerosity</u>:** A proposed class must be so numerous that joinder of all members individually

is impractical. Fed. R. Civ. P. 23(a)(1). This requirement does not mean that joinder must be

impossible, but only that the difficulty or inconvenience of joining all members of the class makes class

litigation desirable. *Millan*, 310 F.R.D. at 603. *See also Vasquez v. Coast Valley Roofing, Inc.*, 670

F.Supp.2d 1114, 1121 (E.D. Cal. 2009); *Jones v. Agilysys, Inc.*, 2013 WL 4426504, at *4 (N.D.Cal. Aug.

15, 2013). The numerosity requirement requires examination of the specific facts of each case and

imposes no absolute limitations. *Vasquez*, 670 F.Supp. 2d at 1121 (citing *General Tel. Co. of the*

*Northwest, Inc. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698 (1980). Courts have routinely found that

the numerosity requirement is met when the class comprises 40 or more members. *Id. See also Millan*,

310 F.R.D. at 603 (citing *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D.Cal. 2011)).

In this case, the proposed Rule 23 Uniform Class includes approximately 259 employees who worked

for Defendant during the relevant period. *Joint Motion* (ECF No. 63), at 7. The Court infers from the

information provided by the parties that Defendant required all of its mechanics and technicians to wear

company uniforms and that many of these employees agreed to have $7.50 deducted from their

paychecks for uniform cleaning, thereby giving rise to the issue under NRS § 608.165.

      The limited size of any individual plaintiff's recovery is relevant to the numerosity requirement.

*Vasquez*, 670 F.Supp.2d at 1121 (citing *Edmondson v. Simon*, 86 F.R.D. 375, 479 (N.D.Ill. 1980).

Where the potential recovery by any individual plaintiff is relatively small, individual members of the

class will likely be unwilling or unable to bring separate lawsuits. *Id.* Assuming that Defendant's

employees are paid on a semi-monthly basis as required by Nevada law, *see* NRS § 608.060.1, a member

of the Uniform Subclass who was subjected to the Laundry Policy for the entire Class Period of 46

months would have a potential claim of $690.00 ($7.50 times 92 paychecks), plus interest. The small

potential recovery for each member of the Uniform Class also favors class action treatment.

      **(b) <u>Commonality</u>:** Rule 23(a) requires questions of law or fact common to the class.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same

injury[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011) (quoting *General*

12

*Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364 (1982). The class claim must

depend on a common contention which is "of such a nature that it is capable of classwide

resolution–which means that determination of its truth or falsity will resolve an issue that is central to

the validity of each one of the claims in one stroke." The commonality requirement is met with respect

to the Uniform Subclass which involves the common contention that Defendant required employees to

pay for the cleaning of their uniforms in violation of NRS § 608.165, and unlawfully deducted $7.50

from their paychecks. Plaintiffs' argument that Defendant was required to pay for the cleaning of

employee uniforms because they became soiled with grease and chemicals appears to apply to all of the

class members who were automobile mechanics and technicians.

      **(c) <u>Typicality</u>:** Rule 23(a)(3) also requires that the claims or defenses of the representative

parties be typical of the claims or defenses of the class. "Typicality and commonality requirements are

similar and tend to merge." *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 509

(N.D.Cal. 2011) (quoting *Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 249

F.R.D. 334, 346 (N.D.Cal. 2008)). "Under the rule's permissive standards, representative claims are

'typical' if they are reasonably coextensive with those of absent class members; they need not be

substantially identical." *Id.* (citing *Hanlon*, 150 F.3d at 1020). The class representative must be part of

the class and possess the same interest and suffer the same injury as class members. *Id.* (citing *General

Telephone Co. of Southwest*, 457 U.S. at 157). That injuries may differ in amount does not defeat

typicality. *Id.* Typicality is met with respect to the Uniform Subclass of which both Plaintiffs Acuna

and Shaffer are alleged members.

      **(d) <u>Adequacy of Representation</u>:** The determination under Rule 23(a)(4) whether the

representative parties will fairly and adequately represent the class requires resolution of two questions:

(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and

(2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

*Hanlon*, 150 F.3d at 1020. *Hanlon* noted that "[e]xamination of potential conflicts of interest has long

been a prerequisite to class certification. That inquiry is especially critical where the class settlement is

tendered along with a motion for class certification. *Amchem* [*Products, Inc. v. Windsor*, 521 U.S. 591,

117 S.Ct. 2231 (1997)] instructs us to give heightened scrutiny to cases in which class members may

have claims of different strength." *Id.*

In *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011), the court stated that one inherent risk of a settlement class action "is that class counsel may collude with the defendants, 'tacitly reducing the overall settlement in return for a higher attorney's fee.'" The court's role is to police the inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees. *Id.* (quotation marks and citations omitted). In making the fairness assessment, the court generally weighs the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Id.*

At this preliminary stage there is no clear conflict between the interests of the plaintiffs and the class members they purport to represent. Mr. Acuna and Mr. Shaffer are represented to be members of the Uniform Class. They are also respectively members of the FLSA Mechanics and Technicians subclasses. The proposed settlement provides that members of the Rule 23 Uniform Subclass will receive reimbursement based on a pro rata formula for the amounts deducted from their paychecks for uniform laundering. If all 259 past and present employees had $7.50 deducted from each paycheck for the entire 46 month Class Period, then the total amount recoverable by the Uniform subclass would be $178,710.00. ($7.50 times 92 paychecks times 259 class members). It seems unlikely, however, that every member of the Uniform Class would be entitled to the maximum payment. The total amount to be distributed to members of the Uniform subclass also depends on the number of individuals who consent to participate in the settlement for the FLSA Mechanics and Technicians subclasses. Until the potential recovery of the FLSA settlement subclasses is determined, the total amount available to pay claims of the Uniform Subclass members is unknown. Based on the information presently available, however, there will likely be sufficient funds to provide reasonable compensation to the Uniform subclass members.

The parties disagree whether a private right of action exists under NRS § 608.165 or whether

14

Defendant's practice of requiring employees to pay for the cleaning of their uniforms violated that statute. Counsel for the parties agree that the outcome of this issue is not certain. Counsel for both parties are experienced class action litigators. Their opinion regarding the uncertainty of the outcome of this issue is therefore entitled to some weight. Given the uncertainty of the outcome of the action and the likelihood that Uniform Subclass members will receive reasonable compensation for their alleged damages, the proposed settlement for the Rule 23 Uniform Subclass appears reasonable, fair and adequate.[4]

An action may proceed as a class action if one of the three prongs of Rule 23(b) is satisfied. Here, the parties assert that certification is proper under Rule 23(b)(3) which requires that (i) common questions of law and fact predominate over individual questions, and (ii) that a class action is a superior method for a fair and efficient adjudication of the controversy. "'[T]he focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues.'" *Millan*, 310 F.R.D. at 606 (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 663 (E.D.Cal. 2008)). Where common questions present a significant aspect of the case and are able to be resolved for all class members in a single action, the case can be handled on a representative basis, rather than an individual basis. *Id.* In this case, the primary injuries to the class members are identical in that they were subjected to a disputed policy that required them to pay for the cleaning of their uniforms. Although the scope of allegedly improper cleaning charge deductions will vary from class member to class member, the determination whether the policy violated Nevada law "will answer the bulk of the inquiry before the Court." *Id.*

With respect to whether a class action is superior, Rule 23(b)(3) requires the court to consider "'(A) the class members' interests in individually controlling the prosecution or defense of the separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing the class action." *Millan*, 310 F.R.D. at 606 (quoting Rule 23(b)). Where parties have agreed to pre-certification settlement, subparts (C) and

---

[4] Because the request for preliminary approval of attorneys fees applies to both the Rule 23 and FLSA Subclasses, the Court discusses that issue after it determines whether the proposed settlement of FLSA subclasses is otherwise also fair and reasonable.

(D) are arguably irrelevant. *Id.* (citing *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231; and *Murillo*, 266 F.R.D. at 473). The maximum amount recoverable by any employee for Defendant's violation of NRS §608.165 is small and makes the pursuit of individual actions impractical and improbable. Assuming that sufficient settlement funds are allocated to the Uniform Subclass fund, it appears likely that class members will receive adequate compensation. (The actual amounts that class members will receive cannot be determined until the size of the FLSA subclasses and the funds to be allocated to those subclasses is determined.) There is no evidence that any other actions have been brought by class members. All of the class members were employed by Defendant in Nevada and this is likely the only federal forum in which the actions could be brought. Because the parties have entered into a settlement agreement, management of the class action is not an issue at this time. The Court, therefore, finds that common issues predominate and that a class action is a superior method for adjudicating and resolving the claims arising out of Defendant's uniform laundering policy.

## 2. <u>FLSA Collective Action Certification.</u>

Courts in the Ninth Circuit use a two step process with respect to certifying a collective action class under the FLSA. At the first step, the court considers whether the proposed class should be conditionally certified and notice of the action given to putative class members. This determination is based on the pleadings and affidavits submitted by the parties and the court applies a fairly lenient standard for conditional certification. At the second step of the process, the party opposing certification may move to decertify the class once discovery is complete and the case is ready to proceed to trial. If the court finds that the plaintiffs are not similarly situated at this step, it may decertify the class and dismiss the opt-in plaintiffs without prejudice. *Millan*, 310 F.R.D. at 607. *See also Davis v. Westgate Planet Hollywood Las Vegas*, 2009 WL 102735, at *9 (D.Nev. Jan. 12, 2009). With regard to approval of a FLSA collective action settlement, the court must also determine whether a collective action is warranted and whether the ultimate settlement is fair. *Khanna*, 2014 WL 1379861, at *6.

In this case, the parties have stipulated to the creation of two FLSA subclasses for settlement purposes. The Mechanics Subclass is comprised of Defendant's present and former employees who performed automobile maintenance and repair during the Class Period, and who were and are paid mostly by commissions, and as to whom Defendant claims the retail/service commission exemption

under the FLSA and Nevada law.  The Technicians Subclass consists of Defendant's present and former employees who performed commercial tire repair and servicing and those who performed specific types of automotive servicing, but not the same work as Mechanics, during the Class Period.  These employees all were and are paid mostly at hourly rates supplemented by commissions.  Members of both of these subclasses were allegedly deprived of minimum wages or overtime pay due them.

The parties have not provided sufficient information for the Court to determine the merits of Plaintiffs' overtime and minimum wage claims.  The joint motion states:

> Plaintiffs and Defendant continue to disagree over the merits of the claims asserted.  If the parties continue to litigate this matter, they would be forced to engage in costly and protracted litigation in order to prove their claims and defenses.  Defendant, in particular, faces issues of considerable time and expense to process electronic data in light of its former computerized payroll system (in MS DOS).  Even if Defendant were to prevail, it would have incurred total expenses for processing such data approaching a significant portion of the amount of the Settlement.  Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and resources by both parties, the amount of their recovery is uncertain.  Because of the nature of defendant's defenses, the range of recovery in this matter is zero, or nearly zero to full damages.

*Joint Motion* (ECF No. 63), at 11; *see also Amended Joint Motion* (ECF No. 78), at 14-15.  As stated, putative members of the Mechanics and Technician Subclasses must return signed consents to join the FLSA collective action and participate in the settlement with respect to those subclasses.  The extent to which putative class members join the class will be a significant indicator as to whether the proposed settlement is fair and reasonable.  It may well be that the proposed settlement is preferable to the expenditure of substantial sums by both sides to further litigate the case.  The fact that the settlement was achieved during a mediation conference presided over by a neutral mediator is a factor supporting the reasonableness of the proposed settlement.  *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d at 946.  Based on the information presently available to the Court and the liberal standard for conditional certification of an FLSA class at this stage of the proceeding, the Court will conditionally certify the two FLSA subclasses and permit notice to be served on the putative class members based on the proposed settlement.

### 3.    Proposed Attorneys' Fees for Class Counsel.

At the preliminary stage, the court may authorize the sending of a notice that includes the parties'

proposed attorneys' fees and litigation costs so long as the fees and costs are reasonably within the range of what the court may ultimately approve. *See Murillo*, 266 F.R.D. at 480; *Millan*, 310 F.R.D. at 613. Where a settlement produces a common fund for the benefit of the entire class, the court has discretion to employ either the lodestar method or the percentage-of-recovery method. *Bluetooth*, 654 F.3d at 942 (citing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)).

"The lodestar figure is calculated by calculating the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The court may adjust the lodestar figure up or down based on a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. *Id.* at 941-42 (citing *Hanlon*, 150 F.3d at 1029). The foremost consideration, however, is the benefit obtained for the class. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-36, 103 S.Ct. 1933 (1983) and *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)).

Because the benefit to the class is easily quantified in common-fund settlements, courts may award attorneys a percentage of the common fund in lieu of the often more time consuming task of calculating the lodestar. "Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Powers v. Eichen*, 223 F.3d 12489, 1256-57 (9th Cir. 2000); and *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). "A district court may depart from the benchmark but, 'if such an adjustment [to the benchmark] is warranted, . . . it must be made clear by the district court how it arrives at the figure ultimately awarded.'" *Powers v. Eichen*, 229 F.3d at 1256-57 (quoting *Graulty,* 886 F.2d at 272). The lodestar calculation may also be used as a cross-check on the reasonableness of a percentage based award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2016); *Gonzalez-Rodriquez v. Mariana's Enterprises, Inc.*, 2016 WL 3869870, at *6 (D.Nev. July 14, 2016).

Plaintiffs' counsel request an attorney's fee award of $97,350.00 which represents 33 percent of the total maximum recovery. *Joint Motion* (ECF No. 63), at 16-17; *Amended Joint Motion* (ECF No.

78), at 19-26.  They note that the retainer agreement provides for a 40 percent contingent fee which they have reduced by 7 percent.  The joint motion also included an alternative "lodestar" fee calculation of $93,350.00, based on hourly rates of $650.00 for attorney Steven Parsons, $450.00 for attorney Andrew Rempfer, $325.00 for attorney Joseph Mott, and $225.00 for attorney Scott Lundy.  Plaintiffs' counsel submitted the following estimated attorney hours:  Mr. Parsons–29.5 hours, Mr. Rempfer–109 hours, Mr. Mott– 55 hours, and Mr. Lundy–33 hours.  *Id.* at 17-18.  The Court advised the parties at the January 11th hearing that it was not inclined to approve an attorney's fee award greater than 25 percent based on the information in the joint motion and attached declarations.  The Court, however, granted Plaintiffs' counsel's request to submit a supplemental brief in support of their fee request.  In the amended joint motion, Plaintiffs' counsel have reduced the proposed hourly rate for attorney Steve Parsons to $500.00 which results in a revised lodestar calculation of $89,100.00.  They still request, however, that the Court approve the percentage fee award of $97,350.00.  *Amended Joint Motion* (ECF No. 78), at 24-25.

Plaintiffs' counsel state that many courts have approved attorney's fee awards based on 33 percent of the common fund.  They cite eleven district court decisions spanning the time period from 2000 to 2012.  *Supplement Brief* (ECF No. 4), at 5-6.  Plaintiffs' counsel also quote *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 448 (E.D.Cal. 2013) that "[t]he typical range of acceptable attorney's fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage."  *Amended Joint Motion* (ECF No. 78), at 22.  Although the *Barbosa* court cited *Powers v. Eichen*, 229 F.3d at 1256, in support of the foregoing statement, the court in *Powers* did not refer to such a range of awards.  The court did state that 25 percent is the benchmark and that if the court departs from the benchmark, it must make clear how it arrives at the figure ultimately awarded. The court reversed an award of 30 percent where the district court failed to provide clear reasons why it departed from benchmark.  *Id.*, 229 F.3d at 1257-58.  *Barbosa* also cited *Knight v. Red Door Salons, Inc.,* 2009 WL 248367, at *3 (N.D.Cal. Feb. 2, 2009), for the proposition that in most common fund cases the award exceeds the benchmark percentage, and *In re Activision Sec. Litig*, 723 F.Supp. 1373, 377 (N.D.Cal. 1989), which stated that nearly all common fund awards range around 30 percent.  The Court does not find these cases persuasive that the court should award fees in excess of the 25 percent benchmark unless the specific circumstances in the case support such a departure.  The Ninth

Circuit has made clear as recently as 2015, in *Allen v. Bedolla*, 787 F.3d 1218, 1224 n.4 (9th Cir. 2015), that 25 percent remains the benchmark and the district court must provide clear reasons for departing from that benchmark.

In determining whether a percentage fee or lodestar fee award is fair and reasonable, the court may consider various factors including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of counsel's work; (5) the contingent nature of the fee and the financial burden; and (6) similar awards made in similar cases. *Gonzalez-Rodriguez v. Mariana's Enterprises, Inc.*, 2016 WL 3869870, at *6 (citing *Barbosa*, 297 F.R.D. at 449; and *Vizcaino*, 290 F.3d at 1047-50). In rejecting a fee award above the 25 percent benchmark in a case involving the same Plaintiffs' attorneys, the court in *Mariana's* stated that they had not demonstrated special circumstances for exceeding the benchmark. The court noted that Plaintiffs' counsel has extensive experience in employment law, and has successfully prosecuted cases that resulted in class and conditional class certification. In *Mariana's*, Plaintiffs' counsel estimated that they spent over 140 hours working on the case, the bulk of which was spent in reviewing wage records and documents received from the Department of Labor. The court found that these facts did not demonstrate special circumstances supporting an upward adjustment from the 25 percent benchmark. *Id.* at *7.[5]

In this case, Plaintiffs' counsel recognized the potential for a Rule 23 class action based on Defendant's practice of requiring employees to pay for the cleaning of their company issued uniforms. Plaintiffs' counsel also recognized the potential for an FLSA collective action based on the alleged failure to pay minimum wages or overtime pay to Mechanic and Technician employees. Giving due credit to Plaintiffs' counsels' knowledge and experience in such matters, there does not appear to be anything unusual or complex in their recognition and pursuit of the claims in this case. No doubt, Plaintiffs have expended additional time and effort than they otherwise would have done if they represented only the two named Plaintiffs. Plaintiffs' counsel will be compensated for their services,

---

[5]The gross amount of the common fund settlement in *Mariana's* was $90,000.00. Plaintiffs' counsel requested a fee award of $59,614.00 which was 66 percent of the gross settlement amount. They argued that the requested award was $20,000.00 less than $79,125 lodestar figure based on their proposed hourly rates and estimated 140 hours. The Court approved a 25 percent fee of $22,500.00. The percentage fee requested by Plaintiff's counsel in this case is much more reasonable.

however, by receiving a 25 percent fee award based on a much larger settlement fund.

The joint and amended motions state that both parties expended considerable time on motion practice. *Joint Motion* (ECF No. 63) at 16; *Amended Joint Motion* (78), at 18-19. The Court has independently looked at those motions. Plaintiffs' opposition to Defendant's motion to dismiss was 17 pages long. Plaintiffs' motion for partial summary judgment and their opposition to Defendant's motion for summary judgment were 8 and 6 pages, respectively, and dealt with the same issues raised in the motion to dismiss. Plaintiffs' motion for class certification was 29 pages long, and likely required substantial work. Again, the issues addressed in the motion for class certification were not unusual and experienced FLSA and class action counsel such as Plaintiffs' counsel should be familiar with them. The Court also recognizes that Plaintiffs' counsel likely spent substantial time in investigating the case, drafting the complaint, preparing and reviewing written discovery and negotiating, preparing for and attending the mediation, and reviewing or drafting the settlement documents. It does not appear, however, that any depositions were taken. Nor is there any indication that the parties became embroiled in significant discovery disputes.

The joint motion states that Defendant is willing to pay up to $295,000.00 because of the considerable time and expense it will incur to process electronic data in light of its former computerized payroll system (in MS DOS). Defendant states that even if it were to prevail, it would have incurred total expenses for processing such data approaching a significant portion of the amount of the Settlement. The motion states that "[e]ven if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and resources by both parties, the amount of their recovery is uncertain." *Joint Motion* (ECF No. 63) at 11. While these representations may justify final approval of the proposed settlement amount as fair and reasonable, they do not support a finding that the settlement was achieved as a result of exceptional legal services that justifies an upward departure from the 25 percent benchmark. It could be argued on the basis of these representations that the settlement is somewhat fortuitous for Plaintiffs and the class members, in that it is based on avoidance of the burden and expense of further litigation rather than on the actual merits and value of the claims

As stated above, the court may award fees based on the lodestar approach or use the lodestar figure as a cross check on the requested percentage fee award. The party seeking the fee award must

submit evidence supporting the reasonableness of hourly rates claimed. A reasonable hourly rate should reflect the prevailing rates of attorneys practicing in the relevant community. *Mariana's*, at *8 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (additional citations omitted). "The burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cotton v. City of Eureka, Cal.*, 889 F.Supp.2d 1154, 1161 (N.D.Cal. 2012) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S.Ct. 1541 (1984)).

In *Mariana's*, these same Plaintiffs attorneys requested approval of hourly rates of $650 for Mr. Parsons, $450 for Mr. Rempfer and $275 for Mr. Mott. The court stated that "[r]ate determinations in other cases in the District of Nevada have found hourly rates as much as $450 for a partner and $250 for an experienced associate to be the prevailing market rate in this district." *Id.* at n. 5 (citing *Marrocco v. Hill*, 291 F.R.D. 586 (D.Nev. 2013); *Ararwal v. Oregon Mut. Ins. Co.*, 2013 WL 5882710 (D.Nev. Oct. 30, 2013); *Stephens Media LLC v. Citihealth, LLC*, 2013 WL 4045926 (D.Nev. Aug. 7, 2013); *In re USA Commercial Mortg. Co.*, 2013 WL 3944184 (D.Nev. July 30, 2013); *Cervantes v. Emerald Cascade Restaurant Sys., Inc.*, 2013 WL 3878692 (D.Nev. July 25, 2013), *Plaza Bank v. Alan Green Family Trust*, 2013 U.S. Dist. LEXIS 58657, 2013 WL 1759580 (D.Nev. April 24, 2013); and *Aevoe Corp. v. Shenzhen Membrane Precise Electron, Ltd.*, 2012 WL 2244262 (D.Nev. June 15, 2012)). The court found that hourly rates sought by Mr. Parsons and Mr. Rempfer "[were] well over the range of hourly rates approved in this district." *Mariana's*, 2016 WL 3869870 at *9. The court also noted that Plaintiffs' counsel's declaration did not aver that their hourly rates are usual or customary in this locality, only that they were rates that each lawyer typically charged. *Id.*

Plaintiffs' attorneys' declarations in this case also state that their proposed hourly rates are what they ordinarily or typically charge for their services. *Joint Motion* (ECF No. 63), Exhibits 2–5. Although they state that the rates are customary, they do not provide any evidentiary justification for that assertion. Plaintiffs therefore arguably fail to meet their burden as to the reasonableness of their proposed hourly rates. *Cotton*, 889 F.Supp.2d at 1161. In their supplemental brief and the amended joint motion, Plaintiffs' counsel have reduced the hourly rate of Mr. Parsons to $500.00 which would reduce the overall lodestar fee calculation to $89,100.00. They still request, however, that the Court

approve a 33 percent contingent fee award of $97,350.00. *Supplemental Brief* (ECF No. 74) at 8-9.

The court in *Mariana*'s also rejected Plaintiffs' counsels' lodestar calculation because they failed to produce contemporaneous billing records documenting their expenditure of time on the case. As stated above, the lodestar figure requires that the number of hours the prevailing party reasonably expended on the litigation be supported by adequate documentation. *Bluetooth*, 654 F.3d at 941. The party seeking an award of fees "has the burden of submitting billing records to establish that the number of hours it has requested are reasonable." *Gonzalez v. City of Maywood*, 729 F.3d at 1202 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)). "Thus, to determine whether the attorneys for the prevailing party could have reasonably billed the hours they claim . . . , the district court should begin with the billing records the prevailing party has submitted." *Id.* The court should not permit compensation for hours that are "'excessive, redundant or otherwise unnecessary." *Id.* at 1203 (citing *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008)). In *Mariana's*, the plaintiffs counsel indicated that their firm does not ordinarily prepare hourly billing records. The court stated that this practice did not relieve Plaintiffs' counsel of their duty to produce adequate records to support their fee request. *Id.* at *9.

In this case, Plaintiffs' counsel have also not submitted, and apparently do not have, contemporaneous hourly billing records. They have provided only estimates of the hours each attorney spent on the case. Based on the declarations of the Plaintiffs' counsel, there appears to be considerable overlap and probable duplication in the estimated hours expended in performing particular tasks. For example, for drafting and reviewing the complaint, Mr. Rempfer spent 12 hours; Mr. Parsons spent 4.5 hours; and Mr. Mott spent 6 hours—for a total of 22.5 hours. Likewise, Mr Rempfer spent 5 hours drafting and reviewing the mediation brief and 10 hours for attending the mediation. Mr. Parsons spent 3 hours preparing for the mediation. Mr. Mott spent 15 hours preparing for and participating in the mediation, and Mr. Lundy spent 10 hours preparing for and participating in the mediation. Thus, four lawyers spent 43 hours in preparing for and attending the mediation. Similar duplication appears in the performance of other litigation tasks generally described in the declarations. No real effort has been made to demonstrate the reasonableness and necessity of these hours. Without the ability to review well-documented hourly billing records, the Court cannot determine whether attorneys' estimates are, in

23

fact, close to the actual hours that they worked on the case, whether there was an appropriate division of labor, and whether the hours billed were, in fact, reasonable.

Plaintiffs' counsel have failed provide adequate support for their proposed lodestar fee calculation. Therefore, it cannot serve as the basis for a fee award or as a cross-check on Plaintiffs' counsels' request for a 33 percent contingent fee award. While the Court accepts that Plaintiffs' counsel spent considerable time on this case, they have not demonstrated that there was anything special in the circumstances, either in the nature of the services provided or the results achieved, that justifies an upward departure from the 25 percent benchmark. A contingent fee of $73,750.00, based on 25 percent of the gross settlement value, therefore appears adequate to reasonably compensate Plaintiffs' counsel for their efforts in this case.

**4. Proposed Litigation Costs Award and Enhancement Payments to Class Representatives.**

The $14,600.00 in proposed litigation costs, including $10,000.00 to cover the expected fees of the Claims Administrator, requested by Plaintiffs appear reasonable and will likely be granted by the Court upon final approval of the settlement. The Court also finds that a payment of $1,000.00 each to Plaintiffs Acuna and Shaffer for their services as class representatives, appears reasonable on its face and will therefore likely be approved.

**5. Notice and Claim Form Requirements.**

Based on the amendments to the settlement agreement, notice of settlement and claim forms made by the parties, the Court finds that these documents comply with the requirements of the FLSA and Rule 23, subject to the parties making the amendments or corrections to the Notice of Settlement discussed on page 8 of this Order. These documents provide adequate notice to the class members regarding the nature of the FLSA subclasses and the Rule 23 class, the class claims to be settled, the proposed amounts to be paid to the class members who participate in the settlement, the right to opt-in or request exclusion (opt-out) from the FLSA and Rule 23 classes, respectively, and the rights of class members to object to the reasonableness and fairness of the settlement. The Court will, therefore, conditionally certify the FLSA collective action and the Rule 23 classes, and will preliminarily approve the proposed settlement subject to an attorney's fee award of no more than 25 percent of the proposed

24

gross settlement amount.  Accordingly,

**IT IS HEREBY ORDERED** that the parties' Joint Motion to Approve Settlement (ECF No. 63), and Amended Joint Motion To Preliminarily Approve Settlement (ECF No. 78) are hereby **granted** as follows:

1. The settlement of this action upon the terms and conditions set forth in the Stipulation and Agreement of Settlement, as amended, is preliminarily approved.

2. The gross settlement amount of $295,000.00 is within the range of reasonableness necessary for preliminary approval, and is a fair, adequate, and reasonable amount to compensate all potential members of the settlement classes when balanced against the expense and potential outcome of further litigation, and ultimately relating to liability and damages.  It is also reasonable for Defendant to pay the settlement proceeds in ten (10) equal monthly installments, with a variance in any total monthly payment of five (5) percent above or below the monthly payment of $29,500.00 so long as the total of all payments does not exceed the maximum settlement amount of $295,000.00.

3. The Court conditionally certifies the following collective action subclasses pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216:

(a) The "Mechanics Subclass" consisting of those persons who worked for Defendant as Mechanics, otherwise known as Auto Technicians, during the Class Period of March 2, 2013 through January 31, 2017, and who file a timely, valid Claim/Consent Form, consenting to be a party in the FLSA claims in the action and to release those claims subject to Court approval.

(b) The "Technicians Subclass" consisting of those persons who worked for Defendant as either a Tire Technician or a General Services Technician, during the Class Period of March 2, 2013 through January 31, 2017, and who file a timely, valid Claim/Consent Form, consenting to be a party in the FLSA claims in the action and to release those claims subject to Court approval.

4. The Court preliminarily certifies the "Uniform Subclass" pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The "Uniform Subclass" consists of those persons employed by Defendant during  the Class Period of March 2, 2013 through January 31, 2017, and who paid through payroll deductions fees to cover the costs of laundering their uniforms, and who file a timely, valid Uniform Claim form, if required under the terms of the Settlement Agreement.

25

5. Plaintiff Daniel Acuna is appointed as class representative of the Mechanics Subclass and Uniform Subclass. Plaintiff Jerry Shaffer is appointed as class representative of the Technicians Subclass and Uniform Subclass, and the Court preliminarily approves an enhancement or service payment to the named Plaintiffs in the amount of $1,000.00 each.

6. The Law Firm of Rempfer Mott Lundy PLLC, is appointed as Class Counsel and the Court preliminarily approves their request for attorney's fees up to $73,750.00, for all current and future attorney's fees, and $14,600.00 for costs incurred in the action, which includes the payment of $10,000.00 to the Claims Administrator for its services.

7. Swarts & Swarts is confirmed as Claims Administrator, and the notice and claim procedures set forth in the Settlement Agreement, as amended, are approved.

8. The Claim/Consent Form, the Uniform Class Claim Form, Request for Exclusion from the Uniform Class, attached to the *Amended Joint Motion*, respectively as Exhibits 7, 4, and 5, and the Notice to the Class of Proposed Settlement, Exhibit 6, and as amended in accordance with this Order, are approved. Counsel shall file an amended Notice to the Class of Proposed Settlement that complies with this Order prior to mailing it to class members.

9. Defendant shall provide to the Claims Administrator, Swarts & Swarts, within fourteen (14) days following the filing of this Preliminary Approval Order, a spreadsheet for each member of the "Mechanics Subclass," "Technicians Subclass," and "Uniform Subclass," which will list for each subclass or class member, his or her name, last-known address, social security number, and the number of full and partial months employed during the Class Period. With respect to the "Uniform Subclass," the spreadsheet must note the number of full and partial months employed and during which the Defendant deducted fees for uniform laundering during the Class Period. This information must come from Defendant's payroll and personnel records, and in a format reasonably acceptable to the Claims Administrator. Defendant agrees to consult with the Claims Administrator prior to the production date to ensure that the format will be acceptable to the Claims Administrator. The information provided on each spreadsheet, and any other Settlement Class data, will be used by the Claims Administrator solely for the purpose of effectuating the Settlement, and will not be provided to Class Counsel.

10. Within twenty-one (21) calendar days of the filing of this Preliminary Approval Order, the

Claims Administrator must (a) mail a Notice and Claim/Consent Form to each member of the "Mechanics Subclass" and "Technicians Subclass;" and (b) mail a Notice and Uniform Class Claim Form and Request for Exclusion from Class Form to each member of the "Uniform Subclass."

11.  A final approval hearing will be held on **Thursday, July 19, 2018** at 9:30 AM in Court Room No. 3A to determine (a) whether the proposed settlement is fair, reasonable and adequate, and should be finally approved; (b) the amount of attorney's fees and costs to award to Class Counsel; (c) the amount to be paid to the Claims Administrator Swarts & Swarts; and (d) the amount to be paid to the class representatives for their services.

DATED this 19th day of March, 2018.

GEORGE FOLEY, JR.
United States Magistrate Judge